# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Scot. W. Feldmeyer, Sr.,

      Plaintiff,

v.

BarryStaff, Inc.

      Defendant.

Case No. 1:16cv954

Judge Michael R. Barrett

## **OPINION & ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 14). Plaintiff filed a response and Defendant filed a reply. This matter is now ripe for disposition.

## I.    BACKGROUND/FACTS

BarryStaff, Inc. ("BarryStaff") provides staffing services to clients through temporary-to-hire placements and permanent placements of employees. (Doc. 19, PageID 547-48). Defendant hired Plaintiff in the summer of 2007, and shortly thereafter he was tasked with running Defendant's new office in Mason, Ohio. (Doc. 17, PageID 355-56; Doc. 19, PageID 542). Doug Barry, co-owner of BarryStaff, attributed the idea of opening a Mason office to Plaintiff. (Doc. 17, PageID 358). Plaintiff even helped decide where in Mason the office would be located. (Id.).

Between August and December of 2014, Plaintiff was hospitalized four times. (Doc. 19, PageID 600, 607, 621). In December 2014, following his hospitalizations, and after being on his wife's health insurance plan for the years preceding, Plaintiff enrolled in Defendant's health insurance plan. (Doc. 16, PageID 553). Plaintiff's health insurance cost Defendant over $600 per month. (Id. at PageID 259-60; Doc. 16-1, PageID 305). According to Plaintiff, around this

time, Doug Barry began making derogatory remarks about his health. (See e.g., Doc. 19, PageID 584-89). On other occasions, Plaintiff alleges Doug Barry made comments about his age. (Doc. 19-1, PageID 647).

Whether the Mason office was profitable is in dispute. (Id. at PageID 359; Doc. 17-1; Doc. 19, PageID 628). For example, Plaintiff cites to an instance in the third quarter of 2014 when Defendant's Mason office had one of its best quarters ever. (Doc. 19, PageID 628). In response, Doug Barry showed up at the office and placed $100 bills on each of the employees' desks. (Id.). On the other hand, Defendant cites to numerous emails sent to Plaintiff wherein Doug Barry appeared to express concern about the profitability of the Mason office. (Doc. 19-2).

Nevertheless, on April 17, 2015, Plaintiff was terminated. According to Plaintiff, he was told it was in an effort to cut costs. (Doc. 19, PageID 552-53). Doug Barry, on the other hand, contends he communicated to Plaintiff they were going to go in a different direction. (Doc. 17, PageID 380). Defendant then hired a new employee, Maryellen Bohls to handle the sales component of Plaintiff's former job.[1] (Doc. 17, PageID 381). Greg Cross, who was already an employee of Defendant took over the remainder of Plaintiff's former responsibilities. (Id.). Ultimately, in February 2016, the assets of Defendant's Mason office were sold. (Id. at PageID 441). The remaining employees at the Mason office were offered positions with the new company. (Id. at 384).

Plaintiff brings the following claims against Defendant: 1) Age Discrimination; 2) Disability Harassment under the Americans with Disabilities Act; 3) Discrimination under the Americans with Disabilities Act; 4) Interference with Protected Rights under the Employment Retirement Income Security Act ("ERISA"); 5) Ohio Civil Rights Act; 6) Breach of Contract.

---

[1] Apparently, Ms. Bohls resigned a couple weeks later due to health issues.

Defendant moves for summary judgment on all of Plaintiff's claims.

## II. <u>STANDARD</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III. <u>ANALYSIS</u>

Aside from Plaintiff's breach of contract claim, the Court analyzes all of Plaintiff's claims using the same framework. To establish a claim of discrimination absent direct evidence[2], a plaintiff must provide circumstantial evidence sufficient to support an inference of discrimination. *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Under the circumstantial test, the Court employs the familiar *McDonnell Douglas* test, which first requires a plaintiff to establish a prima facie case of discrimination. *Id.* As the Sixth Circuit explained:

> To establish a prima facie case of discrimination, a plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *See id.*; *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992). If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* If the

---

[2] Plaintiff has not alleged direct evidence of discrimination.

> defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. *See Wheeler v. McKinley Enters.,* 937 F.2d 1158, 1162 (6th Cir.1991). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Id.* at 572-73. The Court considers Plaintiff's claims out of order for ease of discussion.

### A. ADA Claims

#### 1. Prima Face Case

To establish a prima face case under the ADA, a Plaintiff must show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011). A disability claim under Ohio law is analyzed under the same framework. *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 872 (6th Cir. 2007).

Between August and December of 2014, Plaintiff was hospitalized four times for the following reasons: 1) cellulitis related to diabetes; 2) a cardiac incident; 3) a hip replacement; and 4) another hip replacement. (Doc. 19, PageID 582-83, 591, 600). Defendant argues Plaintiff fails to provide evidence of two of the prongs necessary to establish a prima facie case: 1) that he was disabled as defined by the statute; and 2) that Defendant knew or had reason to know Plaintiff was disabled.

First, Plaintiff was disabled under 29 C.F.R. § 1630.2(h)(1), which defines a physical impairment, in relevant part, as "[a]ny physiological disorder or condition…affecting one or

4

more body systems, such as musculoskeletal...cardiovascular…" Defendant's argument that Plaintiff did not provide evidence that his physical impairments substantially limited one or more of his major life activities is unpersuasive. 29 C.F.R. § 1630.2(g)(3) provides, "[w]here an individual is not challenging the covered entity's failure to make reasonable accommodations and does not require a reasonable accommodation, it is generally unnecessary to proceed under the "actual disability" prong…In these cases, the evaluation of coverage can be made solely under the "regarded as" prong of the definition of disability, which does not require of showing of impairment that substantially limits a major life activity." Plaintiff satisfies the "regarded as" prong for purposes of establishing a prima facie case because he was subject to a prohibited action – namely, he was terminated. 29 C.F.R. § 1630.2(l)(1).

As for whether Defendant knew or had reason to know Plaintiff was disabled, Defendant's argument is likewise unavailing. Plaintiff took time off for each hospital stay. (Doc. 19, PageID 600). Moreover, Doug Barry made comments about Plaintiff's hip replacements, for example, referring to Plaintiff as "the six million dollar man" to a client.[3] (Id. at PageID 584-89). This is sufficient to establish Defendant knew Plaintiff was disabled.

With respect to the remaining factors, it is undisputed Plaintiff suffered an adverse employment action when he was terminated. Defendant likewise does not dispute that Plaintiff was replaced by Maryellen Bohls, at least in part. Finally, the Court finds Plaintiff was otherwise qualified for the position, as he was employed in his role for over seven years prior to his termination.

Having reached the above conclusion, the Court finds Plaintiff has presented evidence in support of its prima facie case sufficient to shift the burden to Defendant to provide a legitimate

---

[3] Defendant argues Doug Barry's comments were in response to Plaintiff's self-deprecating remarks about his own medical condition. (Doc. 14, PageID 78). However, whether Plaintiff made such remarks is not relevant to the question of whether Defendant knew Plaintiff was disabled.

5

non-discriminatory reason for terminating Plaintiff.

## 2. Legitimate Non-Discriminatory Reason

Having found Plaintiff established a prima facie case, the burden shifts to Defendant to articulate some legitimate, non-discriminatory reason for Plaintiff's termination. According to Doug Barry, he terminated Plaintiff because the Mason office "had never reached a revenue goal that had been set, which initially was two million dollars … and I had not seen a return … from that LLC in eight years." (Doc. 17, PageID 379). Barry also said sales were in decline. (Id.). Pam Barry testified Plaintiff's termination was the result of his lack of productivity. (Doc. 16, PageID 185-86).

Defendant's explanation is supported by the record. First, the Mason office's annual sales never reached two million dollars.[4] (Doc. 17-1). Moreover, in 2014 and 2015 sales were in decline. (Id.). Accordingly, Defendant argues Plaintiff was underperforming thereby justifying his termination. (Id. at PageID 395-96).

In short, Defendant has met its burden of production under the *McDonnell-Douglas* framework by articulating a legitimate, non-discriminatory reason for Plaintiff's termination.

## 3. Pretext

The burden once again shifts, this time back to Plaintiff, to show Defendant's articulated reason was a mere pretext to hide unlawful discrimination.

To do so, Plaintiff must produce evidence upon which a reasonable trier of fact could find: 1) there was no factual basis for Defendant's proffered reason for its actions; 2) Defendant's proffered reason did not actually motivate its actions; or 3) Defendant's proffered reason was not sufficient to justify its actions. Plaintiff loosely attacks Defendant's proffered reason on all fronts. The Court addresses these issues out of order for ease of discussion.

---

[4] The highest annual sales figure was achieved in 2013: $1,799,744.

To begin, Plaintiff argues Defendant's proffered reason was not true, and relatedly, argues its reason was not sufficient to justify its actions. Plaintiff contends Doug Barry acknowledged a steady increase in revenue sales between 2010 and 2013. In addition, Plaintiff points to Doug Barry's testimony wherein he acknowledged the Mason office was not operating at a loss from 2011 through 2014. (Doc. 18, PageID 506-08). Finally, Plaintiff points to an instance in 2014 wherein Doug Barry visited the Mason office and placed $100 bills on everyone's desk, including Plaintiff's. Plaintiff argues all of the above decries Defendant's contention that the Mason office was in dire straits. (Doc. 19, PageID 628; Doc. 17, PageID 397-98). Defendant counters that sales in 2014 did drop, as exhibited by the Revenue table. (Doc. 21, PageID 736) ("In each quarter of 2014 sales were lower than the previous corresponding quarter in 2013, resulting in a $107,913.00 drop in sales from the previous year.").

The Court notes that neither party appears to be entirely incorrect. For example, the evidence suggests that Defendant was not operating at a loss in the years cited by Plaintiff, even if the profit was negligible some years. However, Defendant is also correct that sales did decline in 2014. Unsurprisingly, Plaintiff has an explanation for the decline in sales, attributing the decline to two factors: loss of a large client, Riverfront Steel[5], in 2014, and Plaintiff's termination in early 2015.

In short, whether the Mason office was indeed profitable is subject to interpretation. Nevertheless, the question at the summary judgment stage "is whether the plaintiff has produced evidence from which a jury could reasonably doubt the [defendant's] explanation. If so, a prima facie case is sufficient to support an inference of discrimination at trial." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 27-42 (1993)).

---

[5] Doug Barry does not blame Plaintiff for the loss of Riverfront Steel as a client. (Doc. 17, PageID 374-75).

7

Next, Plaintiff argues Defendant's proffered reason regarding productivity did not actually motivate its actions. For example, Plaintiff cites an email sent by Defendant on August 6, 2014, congratulating Plaintiff on his 7-year anniversary with BarryStaff, and thanking him for his loyalty, hard work, and dedication. (Doc. 16-1, PageID 310). Plaintiff argues the timing of this email, just before his rash of hospitalizations, creates an inference that Plaintiff's hospitalizations, and not his lack of productivity, are what caused the shift in Defendant's behavior toward him. Plaintiff also cites various occasions in which Doug Barry commented on Plaintiff's health and hospitalizations. (Doc. 19, PageID. 584-89).

In response, Defendant points to emails sent to Plaintiff from 2012 through 2014, arguing these emails show Plaintiff's performance was indeed lacking. (Doc. 19-2, PageID 661-63). These emails, however, do not clearly, as Defendant argues, show Plaintiff's job was at stake. The emails suggest the office itself was in danger of shutting down. (Id. at PageID 662) ("This office is at the point where it either picks up, quickly or time to shut it down."); (Id. at PageID 663) ("Either we see growth or we will shut things down."). Further, these emails, at times, discuss personnel matters with Plaintiff regarding *other* employees – not Plaintiff's personal lack of productivity. (Id. at PageID 662).

Upon review of the record, the Court finds Plaintiff has produced enough evidence whereby a jury could reasonably conclude Defendant's legitimate, non-discriminatory reason was a pretext to hide unlawful discrimination. In discrimination cases, "an employer's true motivations are particularly difficult to ascertain." *Singfield*, 389 F.3d at 564 (citing *United States v. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Accordingly, once a prima facie case has been established, summary judgment is ordinarily inappropriate. *Id.* Defendant is therefore not entitled to summary judgment on

Plaintiff's ADA claims or Plaintiff's Ohio law disability claim.

## B. ERISA Claim

ERISA prohibits an employer from "discharg[ing]…or discriminat[ing] against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140. "The Sixth Circuit recognizes two types of claims under ERISA § 510: (1) an 'exercise' or 'retaliation' claim where 'adverse action [is] taken because a participant availed himself of an ERISA right; and (2) an 'interference' claim where adverse action is taken as 'interference with the attainment of a right under ERISA.'" *Mattei v. Mattei,* 126 F.3d 794, 797 n. 4 (6th Cir.1997) (citing *Dunn v. Elco Enterprises, Inc.*, No. 05-71801, 2006 WL 1195867, *3 (E.D. Mich. May 4, 2006)).

While Plaintiff argues he has established both a retaliation and an interference claim, his arguments focus largely on his retaliation claim. In other words, Plaintiff argues Defendant fired Plaintiff in retaliation for enrolling in Defendant's health insurance plan. To establish a prima facie claim for retaliation, "a plaintiff must show (1) he was engaged in activity protected under ERISA; (2) he suffered an adverse employment action; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Dunn*, 2006 WL 1195867 at *3. Moreover, the Sixth Circuit requires a plaintiff to provide evidence that a defendant had the specific intent to avoid liability when it discharged him. *Schweitzer v. Teamster Local 100*, 413 F.3d 533, 539 (6th Cir. 2005).

First, Defendant argues Plaintiff's enrollment in Defendant's health insurance plan was not a protected activity; the Court disagrees. The plain language of § 510 prohibits retaliation because a participant availed himself of an ERISA right. There can be no dispute that ERISA

9

regulates employee health insurance plans by setting forth minimum standards for such plans. Accordingly, Plaintiff's enrollment in Defendant's health insurance plan fits squarely within the confines of § 510, and Defendant's argument to the contrary is wholly unavailing.

The only remaining factor in dispute therefore is whether there was a causal link between Plaintiff's enrollment and his termination. Doug Barry testified that by virtue of Plaintiff enrolling in Defendant's health insurance plan, it would cost the company an additional $622.99 each month. (Doc. 16, PageID 260). Defendant argues, however, that Plaintiff has not produced any evidence Defendant had the specific intent to avoid liability.

Plaintiff counters, arguing the temporal proximity to his multiple hospitalizations, as well as his insurance enrollment and his termination is sufficient to establish an inference of discrimination. (Doc. 20, PageID 694) (citing *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562 (6th Cir. 2004).

The parties have differing views on what is sufficient with respect to proximity. Plaintiff cites *Dunn* wherein the court held summary judgment was not appropriate when a plaintiff was terminated approximately four months after he inquired about IRA contributions. *Dunn*, 2006 WL 1195867 at *2. Defendant argues *Dunn* is inapposite because there the employer's comments started *after* his inquiry. Here, Defendant contends Plaintiff admits Doug Barry's comments started *before* his enrollment in the insurance plan and thus, it was not Defendant's specific intent to avoid liability. The Court has already found Defendant is not entitled to summary judgment on Plaintiff's ADA claims. As explained above, a jury could reasonably conclude Doug Barry's comments related to Plaintiff's hospitalizations beginning in August 2014. Accordingly, the fact that the comments began before Plaintiff's enrollment is not dispositive herein. To be sure, at least some of Doug Barry's comments were made around the

time Plaintiff's insurance through Defendant would have begun. (*See e.g.,* Doc. 19, PageID 584-89).

For purposes of summary judgment, the Court finds there is sufficient evidence to support a causal link between Plaintiff's enrollment in Defendant's health insurance plan and his termination. Plaintiff enrolled in January 2015. Less than four months later, Plaintiff was terminated, according to Plaintiff, in an effort to cut costs. While there is conflicting testimony related to whether Plaintiff was indeed terminated to cut costs, this is a credibility issue that cannot be decided at the summary judgment stage. Defendant is therefore not entitled to summary judgment.

### C. ADEA Claim

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, a plaintiff must show 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action; and 4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Johnson*, 215 F.3d at 572.

#### 1. Prima Facie Case

Plaintiff was 61 years old when he was fired and thus, a member of a protected class. (Doc. 19, PageID 626-27). Moreover, it is undisputed Plaintiff suffered an adverse employment action when he was terminated. As discussed above, it is further undisputed that Plaintiff was

replaced by Maryellen Bohls, at least in part. Absent from the record, however, is whether Ms. Bohls was outside the protected class as is required to satisfy the fourth element.[6]

It is not clear whether Defendant disputes the remaining factor (whether Plaintiff was qualified for, and performed his job satisfactorily) or simply jumps to articulating its alleged legitimate non-discriminatory reason. At least indirectly, however, Defendant appears to argue Plaintiff did not satisfactorily perform his job. (Doc. 14, PageID 83) ("Feldmeyer was not achieving a satisfactory level of sales and profitability and had never reached a revenue goal.") Nevertheless, Plaintiff sets forth enough evidence to allow the Court to reasonably infer a causal connection sufficient to establish a prima facie case. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (To establish a prima facie case "requir[es] the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it's credible.").

Defendant argues the Mason office was not profitable thereby inferring Plaintiff was not performing his job satisfactorily. However, Plaintiff cites the Mason office's annual sales from 2010-2016, which confirm the office saw an increase in revenue between 2010-2013. (Doc. 17, PageID 483). Doug Barry confirmed the same. (Id. at PageID 451). As discussed above, the profitability of the Mason office is in dispute. Nevertheless, the evidence set forth by Plaintiff, coupled with the fact that Plaintiff was employed by Defendant for over seven years, is sufficient for the Court to reasonably infer Plaintiff was qualified for his job.

### 2. Pretext

Having already found Defendant articulated a legitimate, non-discriminatory reason for

---

[6] Doug Barry was asked whether he knew how old Ms. Bohls was and he answered "[n]o sir." (Doc. 17, PageID 382).

Plaintiff's termination, the burden shifts back to Plaintiff to show pretext. Plaintiff cites to various comments made by Doug Barry regarding Plaintiff's age. First, Doug Barry testified that he wanted to bring someone "new in that could energize" the current employees and bring in new clients. (Doc. 17, PageID 380-81). In addition, Plaintiff testified that Doug Barry made comments on multiple occasions to the effect of "what do you expect at your age." (Doc. 19, PageID 623). Plaintiff argues these statements, when viewed together, provide a reasonable basis for a jury to conclude that Plaintiff's age was actually Defendant's motivation for his termination. The problem with Plaintiff's argument is that Plaintiff himself admits that Doug Barry's comments in this regard were not related to Plaintiff's ability to perform his job. (Id. at PageID 624). While age-related comments referring directly to an employee can support an inference of discrimination, isolated and ambiguous remarks are too abstract to support a finding of unlawful age discrimination. *Phelps v. Yale Sec. Inc.,* 986 F.2d 1020, 1025 (6th Cir. 1993). These off-handed remarks are the only evidence Plaintiff puts forth to support his ADEA claim.

In sum, Plaintiff has failed to rebut Defendant's legitimate, non-discriminatory reason was a pretext to his unlawful discrimination as it relates to Plaintiff's age specifically. Accordingly, Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

### D. Breach of Contract Claim

To establish a breach of contract claim under Ohio law, Plaintiff must show that: 1) a contract existed; 2) one party fulfilled its obligations; 3) the other party failed to fulfill its obligations; and 4) damages resulted from that failure. *Quest Workforce Solutions, LLC v. Job1USA, Inc.*, 75 N.E.3d 1020, 1030 (Ohio Ct. App. 6 Dist. 2016) (internal citations omitted).

Plaintiff argues upon his termination he offered to complete a few direct hire placements in exchange for commission. (Doc. 19, PageID 553). Such an arrangement is not in dispute.

(Id. at PageID 554). However, upon filing his claim with the EEOC, those commission payments stopped according to Plaintiff. (Id. at PageID 555).

In support of his claim, Plaintiff produces evidence that he placed a candidate on May 1, 2015 after his termination date. (Doc. 20-2). In addition, there is correspondence between Plaintiff and a BarryStaff employee on June 1, 2015 wherein Plaintiff inquired about two outstanding commissions. (Doc. 20-2, PageID 720). While Plaintiff testified that he was paid for two direct placements following his termination, the Court is unable to determine from the record before it, whether Plaintiff is entitled to additional commissions. (Doc. 19, PageID 25-26),

While the Court is not convinced Plaintiff will ultimately prevail on his breach of contract claim, a trier of fact could determine, based upon the record, that an enforceable contract existed, and that despite Plaintiff fulfilling his final obligations to Defendant, Defendant failed to pay. Accordingly, a question of fact remains, and summary judgment is not appropriate.

## **CONCLUSION**

Consistent with the foregoing, Defendant is entitled to judgment as a matter of law on Plaintiff's ADEA claim, as no genuine issues of material fact exist. All other claims remain. Accordingly, Defendant's motion for summary judgment (Doc. 14) is **GRANTED IN PART**.

**IT IS SO ORDERED.**

                                             *s/MIchael R. Barrett*
                                              Michael R. Barrett, Judge
                                              United States District Court